## KENADAY *v.* EDWARDS.

## GREEN *v.* EDWARDS.

APPEALS FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 1236, 1237.   Submitted January 9, 1890. — Decided March 3, 1890.

The value of the property in litigation determines the jurisdiction of this court.

In an appeal from a decree removing a trustee of real estate and denying him commissions, the jurisdiction of this court is to be determined, not by the amount of the commissions only, but by the value of the real estate as well.

The Supreme Court of the District of Columbia at special term confirmed a sale of real estate by a trustee without notice having been given to interested parties. Those parties subsequently appeared, and on their motion, after notice and hearing, the sale was vacated and the trustee at whose request it was made was removed; *Held*, that an appeal lay from that decree to the general term of the court.

A trustee of real estate, after a court of equity, on his own motion, has discharged him and relieved him of his trust and appointed another trustee in his place, has no remaining interest in the property which he can convey by deed.

A trustee of real estate, appointed by the court, subject to its control and order, cannot give good title to the trust estate by a deed made without the consent of the court.

MARY E. MACPHERSON, by clause 6 of her last will and testament, gave, devised and bequeathed to her nephews, Chapman Maupin and Robert W. Maupin, of Virginia, in fee simple, lot five hundred and eleven, with the improvements thereon, on F Street, between Fifth and Sixth Streets, in the city of Washington, to be held (using the words of the will) " by them and the survivor of them, and by such person or persons as may be appointed to execute the trusts declared by this my will, by the last will and testament of such survivor, or by other instrument or writing executed for that purpose by such survivor; but in trust, nevertheless, to manage and control the same and to take the rents, profits and income thence arising and to pay the one-half of the net amount received from such

rents, profits and income monthly, quarterly, half-yearly, or yearly, according to the discretion of my said trustees, to my daughter, Susan W. Edwards, wife of John S. Edwards, for and during her natural life, to her own sole and separate use, free from the control of her present or any future husband and from responsibility for his debts or engagements; it being my design that the income thus provided for my said daughter shall not be assigned, disposed of, or pledged in advance or by way of anticipation, but shall be employed to supply her current wants."

Upon the death of said Susan W. Edwards, the above moiety of net income, profits and rents was, by clause 7, to be invested by the trustees and held by them in trust for the sole and separate use of the testator's granddaughter, Susan W. Edwards, during her life, and upon her death that moiety, with its accumulations, was to be distributed by the trustees among the children and the surviving descendants of the children of the granddaughter *per stirpes*. If the granddaughter died without children or descendants living at her death, this moiety and its accumulations were to belong to the testator's great-granddaughter, Alice Tyler, subject to certain conditions, which need not be here stated.

The remaining moiety of the net income, rents and profits of the property was, by clause 8, devised to the same trustees in trust for the sole and separate use of the testator's great-granddaughter, Alice Tyler, with power to invest such income, rents and profits as in their best judgment was proper, and with authority to her, by last will, to appoint the said moiety and its accumulations to and among her children and their descendants surviving her, in such proportions as she might think fit. If she died, without making a will, then the property was to be distributed among her children and their surviving descendants in fee simple and *per stirpes*. In case she died without children or surviving descendants of such children, then the net income, rents and profits of the estate were to go to her mother, Mary M. Tyler, a granddaughter of the testator, during her life, and upon the death of the latter the next of kin of Alice Tyler were to take the estate and its accumulations.

The will further provided: "I give, devise and bequeath all my other property whereof I may die seized, possessed or entitled, of whatsoever kind, real, personal or mixed, · . . . unto the said Chapman Maupin and Robert W. Maupin and the survivor of them, and such person or persons as may be appointed to execute the trusts of this my will, by the last will and testament of such survivor, or by other instrument of writing executed for that purpose by such survivor, in trust, to hold the same for the purposes and upon the trusts hereinbefore declared in the sixth, seventh and eighth clauses of this my will in respect to the real estate and the accumulations therein named; and I do hereby confer upon my said trustees full power and authority, at his or their discretion, from time to time to sell by public or private sale and to convey to the purchaser or purchasers all or any part of the trust property in this will devised and bequeathed to my said trustees, and to receive, grant acquittance for, and reinvest the proceeds of such sales, and I do expressly relieve purchasers of such property from the obligation to see to the application of the purchase-money."

Robert W. Maupin died in 1876, leaving Chapman Maupin the sole surviving trustee.

Chapman Maupin having expressed a desire to surrender his trust, the present suit was brought in the court below by Susan W. Edwards, widow, and by Alice Tyler, by her next friend, for an accounting in respect to the rents and profits of the trust estate, and for the appointment by the court of a new trustee. After answer by the surviving trustee, the cause was referred to an auditor for the statement of the accounts. The report of the auditor, showing the amounts in the hands of the trustee to be accounted for, was approved. And it was adjudged by the court, March 29, 1882, that the fee-simple estate in the lands devised by the will of Mary E. Macpherson to Chapman Maupin and Robert Maupin, upon certain trusts therein declared, " be, and the same is hereby, taken out of the said Chapman Maupin, the survivor of the said co-trustees, and vested in James B. Green, of the city of Baltimore, together with all the rights, powers, duties and obligations incident

thereto under the said last will and testament; and it is further adjudged, ordered and decreed that all the trusts vested by the said will in the said co-trustees and surviving to the said Chapman Maupin be, and they are hereby, abrogated and repealed as to him and conferred upon the said James B. Green, subject to the terms of the said last will and testament, and that the retiring trustee pay over and deliver to his successor hereby appointed all money, books, papers and other property belonging or relating to the said trust estate.

"And it is further adjudged, ordered and decreed that the said James B. Green, trustee, as herein provided, shall file with this court, before any sale of the said real estate under the powers contained in the said will, a bond in the sum of eight thousand dollars, with a surety or sureties, to be approved by this court, for the faithful performance of his duty in connection with the said sale, and that he shall at all times be subject to the control and order of this court in matters touching the trust, and that the costs of these proceedings are payable out of the principal of the trust estate."

It having been suggested to Chapman Maupin — presumably by Green — that the decree in this cause could not be fully carried into effect without a conveyance by him of the trust property, with all the powers of the surviving trustee, to his successor, he executed, March 3, 1888, to Green a deed, granting and assigning to him and to his successors all the grantor's right, title and estate in and to the property devised to the grantor by the will of Mary E. Macpherson, "in trust for the uses and purposes set out in said will, and coupled with all the powers thereby conferred on the trustees therein named."

On the 7th of March, 1888, Green, as trustee, reported, in this cause, a sale he had made, through agents, on the 31st of January, 1888, to A. M. Kenaday, of the lot and improvements on F Street for $11,000 in cash to be paid on the ratification of the sale. While he expressed a belief that his powers under the will were sufficient to enable him to execute a valid deed to the purchaser, he was unwilling to do so without the approval of the court. The sale was thereupon, on the day this report was made, ratified and confirmed by

the court, but, so far as the record shows, without notice of the sale or of the above application to the court being given to either of the present plaintiffs or to any one representing them.

Green and Kenaday, upon the petition of the plaintiffs, were required, March 17, 1888, to show cause, within a time named, why the order ratifying and confirming the sale to Kenaday should not be set aside as having been improvidently made, the sale itself v: cated, and Green removed from the office of trustee. This order was served upon Green, March 19, 1888, and Kenaday filed an affidavit, alleging that he purchased in good faith, and insisting upon his right to hold the property. His affidavit shows that the sale was consummated on the 7th of March, 1888, the day on which it was approved by the court.

By an order made March 23, 1888, Green was directed to pay into the registry of the court, on or before March 28, 1888, all the funds of every kind and description in his hands as trustee in this cause, and to make answer within one week. He filed an answer on the 29th of March, 1888, in which he denied that the order confirming the sale was improvidently made, or that the price paid for the property was inadequate. He rested his authority to make the sale upon the decree appointing him trustee, and upon the deed made to him by Chapman Maupin.

All the prayers of the petition of the plaintiffs, filed March 17, 1888, were, upon final hearing, denied. From that order the plaintiffs prosecuted an appeal to the general term.

In pursuance of an order of court, Green deposited in its registry one bond of the city of Richmond, Virginia, numbered 67, and standing in his name as trustee, and also $4921.22 in cash. The last-named sum was, by an order passed May 23, 1888, directed to be invested in notes, secured upon real estate, and, until the court otherwise directed, the interest accruing upon the above bond was directed to be paid to the plaintiffs or to their authorized attorney, and not to Green.

Notwithstanding these orders, Green collected the interest upon the bond of the city of Richmond, and paid it to brokers

in discharge of his personal indebtedness to them. He was, therefore, ordered, July 5, 1888, forthwith to pay into the registry of the court the whole of the interest upon that bond accrued and payable on the 2d of July, 1888. He subsequently moved to rescind that order. And Kenaday filed his petition, in general term, praying that the appeal from the decree in special term be dismissed for want of jurisdiction.

Upon final hearing in the general term it was adjudged that the order of March 7, 1888, confirming the sale by Green be set aside; that the sale itself be vacated; that Green be removed from his office and denied commissions as trustee; that he be required to pay into the registry of court the full sum received by him as the price of the property referred to in his report, and all other money, stock, certificates of deposit, and evidences of indebtedness received or held by him as trustee under his appointment in this cause; and that the cause be remanded to the court in special term to ascertain the amount to be paid by him, and to appoint a trustee in his place.

From that decree separate appeals have been prosecuted by Kenaday and Green.

*Mr. George F. Appleby* and *Mr. Calderon Carlisle* for Kenaday, appellant.

*Mr. H. O. Claughton* and *Mr. Cazenove G. Lee* for Green, appellant.

*Mr. Leigh Robinson* and *Mr. Henry Wise Garnett* for appellees.

MR. JUSTICE HARLAN, after stating the above facts, delivered the opinion of the court.

The appellees have moved to dismiss each of these appeals upon the ground that the value of the matter in dispute is not sufficient to give this court jurisdiction; and with the motions to dismiss was joined a motion to affirm the decree as to each appellant. Both motions to dismiss are overruled. As to Kenaday, the decree denies his right to property of which he

claims to be the owner, and which is of the value of eleven thousand dollars. He paid that sum for it in cash to Green as trustee. It is true that there are funds in the registry of the court below, which, in the event of the affirmance of the decree, can be paid over to him, and he be thus far reimbursed for what he paid to Green on the purchase of the property. But we think that the value of the specific property which is in litigation must determine the jurisdiction of this court. And the same principle must control the right of Green to appeal. It cannot be said that his right to commissions as trustee constitutes the whole matter in dispute between him and the appellees. He claims, as trustee, the right to hold and control the proceeds of the sale made to Kenaday. The order removing him as trustee involves his ownership and control of the trust estate for the objects expressed in the will, and, therefore, the value of that estate is the value of the matter in dispute for the purposes of an appeal by him.

We pass to the consideration of the case upon its merits.

It is contended by the appellants that the general term cannot exercise any jurisdiction in equity unless, (1) a suit or proceeding or motion be ordered by the court holding the special term, to be heard by the general term in the first instance; or (2) a motion be filed in a suit that by the rules of the general term is designated as an enumerated motion; or (3) an appeal by a party aggrieved be taken from an order, judgment or decree of the special term which involves the merits of the action or proceeding. The argument is: As the application to set aside the order confirming the sale to Kenaday was heard and determined in special term; as such application could not be regarded as an enumerated motion; as an application to reopen the decree of confirmation was addressed to the discretion of the court, and was not appealable, and, for that reason, did not involve the merits of the proceeding; and as there was no appeal from the order confirming the sale, the general term was without jurisdiction to review the order of the special term refusing to set aside the previous order confirming the sale.

This argument is based upon a misconception of the object

and scope of the proceeding instituted by appellees on the 17th of March, 1888. By their petition filed on that day they assailed, as fraudulent, the sale made by Green to Kenaday, and asked that the order confirming it be set aside, and Green removed from the trusteeship. Upon that petition Green and Kenaday were ruled to show cause why the order of March 7, 1888, ratifying and confirming the sale, should not be set aside, the sale itself vacated, and the trustee removed. They both appeared to that petition; Kenaday by affidavit, insisting upon his right to hold the property, and Green by formal answer. The case was heard in special term upon this petition, and it was ordered that all of its prayers be denied. From that order the petitioners appealed to the general term. It was clearly an order involving the merits of the proceeding; because, unless reversed or modified, it sustained the sale to Kenaday, confirmed his right to hold the property as against the appellees, and held Green in the position of trustee. It was not an appeal simply from an order refusing to set aside the decree of confirmation, but one that involved the integrity of the order confirming the sale, and, therefore, the merits of the whole case made by the petition. As said by Mr. Justice Merrick, in the opinion delivered by him when the court below overruled a petition for rehearing: "It is apparent that in this case the most substantial rights of the parties were involved. Here is an application at the same term at which an order is passed ratifying a sale, which being passed and not appealed from or corrected in any other mode, would definitively settle the rights of the parties and deprive the petitioners absolutely and forever of a title to real estate, by the conversion of the realty into a sum of money, whether the full or an inadequate price for the value of the land need not be considered."

The next contention of the appellant Kenaday is that he is a *bona fide* purchaser for value of this property from a trustee who had full power, under the will creating him trustee, in connection with the deed to him from Chapman Maupin, the surviving trustee, to sell and convey; and that his right to hold the property cannot be affected unless there was such inadequacy of price as indicated collusion between him and

the trustee. It may be that the surviving trustee, under the broad powers of sale given by the will, could in his discretion have sold this property if he had not surrendered his position as trustee, and if the title had not, by the decree of the court, been taken out of him. And it may be that it was competent for him, while holding the trusteeship, to transfer to some one else, by a written instrument, the powers the will gave him. But he had not exercised any such powers prior to the decree of March 29, 1882, divesting him of title, and substituting Green in his place as trustee. After that date he had no connection with the trust estate, and his powers as trustee ceased. That he had the right to surrender his trust, and that it was competent for a court of equity to appoint another person to take the title to the trust property, cannot, in our opinion, be successfully questioned. But the order appointing a new trustee expressly declared that he should at all times be subject to the control and order of the court touching the trust. His subsequent sale, therefore, of the property was subject to confirmation or rejection by the court. He could not pass the title without its consent. The deed from Chapman Maupin, after he had ceased to be trustee, did not add to Green's powers, or place him or the trust estate beyond the control of the court which appointed him.

It results, from what has been said, that the rights acquired by Kenaday, under his purchase from Green, were subject to the power of the court to ratify or disapprove the sale. The order approving the sale was improvidently passed, because made without notice to the beneficial owners of the property, who were entitled to its income, and who were before the court for the protection of their rights. The confirmation was obtained by the trustee with knowledge that the appellees, if notified of the application to the court, would oppose its ratification.

Under all the circumstances disclosed by the record — and which it will serve no useful purpose to state in detail — we are of opinion that the court below did not err in setting aside the confirmation of the sale, vacating the sale itself, and removing the trustee without allowing him any commissions.

The decree below is in all particulars .     *Affirmed.*